Donna Lee H. WILLIAMS, Insurance Commissioner of the State of Delaware, as Receiver of National Heritage Life Insurance Company in Rehabilitation and Continental Stock Transfer & Trust Company, Plaintiffs,

v.

NATIONAL HOUSING EXCHANGE INC., APX Mortgage Services, Inc., Resource Asset Management, Inc., Midwest Independent Bank, Midwest Mortgage Servicing, L.L.C., Jan Starr, Michael Lauzon, Jan Schneiderman, Robert Gorski and Nadine Allen, Defendants.

No. 95 Civ. 1594 (HB).

United States District Court, S.D. New York.

March 29, 1996.

**406**

Michael S. Oberman, Kramer, Levin, Nessen, Kamin & Frankel, New York City, Andrew Dash, Berlack Israels & Liberman, New York City, for Donna Lee H. Williams, Continental Stock Transfer & Trust Company, Inc.

Kerry E. Connolly, Coblence & Warner, New York City, Jeffrey H. Hornstein, Holleb & Coff, Chicago, IL, for National Housing Exchange Inc.

APX Mortgage Services, Inc., Lake Barrington, IL, pro se.

Jeffrey H. Hornstein, Holleb & Coff, Chicago, IL, for Resource Asset Management, Inc.

John D. Landwehr, Jefferson City, MO, for Midwest Independent Bank, Midwest Mortgage Servicing, L.L.C.

John W. Russell, New York City, for Jan Starr.

Brian K. Bernstein, Horwitz, Toback & Hyman, New York City, for Jan Schneiderman.

Robert Gorski, Lake Barrington, IL, pro se.

Nadine Allen, Lake Barrington, IL, pro se.

## OPINION AND ORDER

BAER, District Judge.[1]

On July 17, 1995, Donna Lee H. Williams ("plaintiff" or "Williams") served three defendants in the present case ("defaulting defendants") with interrogatories. On September 15, 1995, Williams also served defaulting defendants with a document request. As of the date of the present motion, defaulting defendants had not replied to either the interrogatories or the document requests. Williams therefore moves this Court for several sanctions pursuant to Fed.R.Civ.P. 37(d).

Defaulting defendants National Housing Exchange ("NHE") and Jan Schneiderman ("Schneiderman") have offered no opposition to the present motion. Counsel for defaulting defendant Jan Starr ("Starr") has submitted an affidavit in opposition on behalf of Starr only, but does not argue on behalf of any other party.[2]

Plaintiff's motion is GRANTED in part and DENIED in part, and for those sanctions hereby denied, modified sanctions are imposed in their place.

### I. PROCEDURAL HISTORY AND THE PRESENT MOTION

#### A. Procedural History

Plaintiff, the Insurance Commissioner of the State of Delaware, is the appointed receiver of National Heritage Life Insurance Company ("Heritage"). On March 8, 1995, plaintiff filed the present suit. Plaintiff alleged that the sale of $126 million in debentures from NHE to Heritage was fraudulent in that NHE, APX Mortgage Services, and their respective controlling persons had misrepresented the status and character of the debentures. Compl. ¶¶ 1–2.

1. Robert M. Radick, a second-year student at New York University School of Law, assisted in the research and preparation of this opinion.

2. Plaintiff asserts that Starr's opposition is submitted only in his individual capacity, and that Schneiderman has submitted no opposition. This appears to be a correct reading of the affidavit in opposition filed by Starr's attorney. Starr's attorney clearly states that he "do[es] not appear on behalf of NATIONAL HOUSING EXCHANGE." Aff. Opp'n ¶ 1. However, in a statement that is considerably less clear, Starr's

attorney states that the affidavit is submitted in opposition to the motion "against JAN STARR and other named defendants." Aff. Opp'n ¶ 1. While this might appear to suggest that Starr's attorney is also representing Schneiderman in the present motion, the remainder of the affidavit refers only to Starr, makes no representations on behalf of Schneiderman, and in fact never mentions Schneiderman by name. As such, I find that Schneiderman and National Housing Exchange have filed no opposition.

In a pre-trial scheduling order issued on July 13, 1995, I required that all discovery be completed by July 20, 1996, in anticipation of trial in January 1997. Given this Court's disfavor towards granting discovery extensions, all parties were advised to report any delays or disputes to the Court immediately, and to request a discovery conference for the attempted resolution of such disputes. Any still unresolved matters would then be addressed by the Court when a party submitted a proposed order on notice to all adversaries.

On November 6, 1995, plaintiff first moved this Court for sanctions stemming from discovery disputes. Plaintiff noted that it had served interrogatories upon NHE and Starr on July 17, 1995, but that neither defendant had responded to the interrogatories or communicated with plaintiff. NHE and Starr had also failed to respond to plaintiff's document requests. Plaintiff thus sought a default judgment against NHE and Starr, attorneys' fees, and any other relief this Court deemed proper. Notice Mot. Ex. A. ¶¶ 3, 8. Starr responded by stating to the Court that "it is not my intention to default in this action," and by pointing to the fact that he was seeking new counsel to represent himself and NHE. Let. J. Starr to Hon H. Baer, Jr., November 14, 1995, at 1.

While the November 6, 1995 motion for sanctions was pending, plaintiff also became unhappy with defaulting defendant Schneiderman's failure to respond to the discovery requests. Let. M. Oberman to Hon. H. Baer, Jr., December 8, 1995, at 1. On December 8, 1995, plaintiff initiated a conference call with Schneiderman and the Court. During this call, Schneiderman professed her intention to respond to plaintiff's interrogatories—either *pro se* or through her attorneys Blodnick Abramowitz & Blodnick—by the end of December. *Id.* However, upon receipt of a letter summarizing the December 8 conference call, Blodnick Abramowitz & Blodnick wrote to the Court. That letter opined that Schneiderman had not attempted to re-engage the firm's services in answering the interrogatories, and accordingly the firm expressed its continuing desire to be relieved as Schneiderman's counsel. Let. D. Fein-berg to Hon. H. Baer, Jr., January 5, 1996, at 1.

On January 17, 1996, this Court issued a Memorandum and Order that, among other things, resolved plaintiff's November 6, 1995 motion for sanctions against NHE and Starr. In view of NHE and Starr's "continuing failure to respond to Williams' discovery requests," as well as Starr's tendency to send strikingly similar letters containing repeated promises to engage new counsel, I held that NHE and Starr would be ordered to pay plaintiff's attorneys' fees, provided that plaintiff submitted documentary support for such fees. Mem. and Order January 16, 1996, at 5–6. Although the Court denied plaintiff's request for a default judgment, the Memorandum and Order stated that, depending on NHE and Starr's ensuing degree of participation in discovery, plaintiff could renew her motion for a default judgment. In deciding any subsequent motion for default that might be filed, this Court noted that whether NHE or Starr had obtained new counsel would have no impact upon the motion's disposition. Rather, the motion would be decided based upon the prejudice NHE and Starr had caused Williams through their continuing delays. *Id.* at 6–7.

With regard to defaulting defendant Schneiderman, the Court granted the requests of Schneiderman's attorneys to be relieved. Moreover, the Court noted that "because Ms. Schneiderman had failed to provide responses to Williams' interrogatories and has not even contacted the Court nor Williams since the ... [December 8] telephone conference, Williams may now move for discovery sanctions as well as reimbursement of Williams' attorneys' fees...." *Id.* at 7–8.

### B. The Present Motion

Plaintiff has responded to the January 16 Memorandum and Order by filing the present motion for sanctions, and has done so with considerable vigor. Plaintiff seeks the following specific sanctions: (1) that the Court order defaulting defendants to respond to all previously served discovery requests within two weeks from the date of this order; (2) that failure of defaulting de-

fendants to respond within two weeks result in the entry of a default judgment against those defendants; (3) that defaulting defendants be held to have waived all objections to the previously served discovery requests, excepting objections based upon privilege; (4) that defaulting defendants be precluded from conducting their own discovery until they have complied with the discovery requests plaintiff has already served; (5) that plaintiff's own discovery period be extended three months beyond the date set in the original pre-trial order; (6) that plaintiff's period for filing an amended complaint be extended 60 days beyond the date on which she receives defaulting defendants' answers to her previously served discovery requests; (7) that defaulting defendants NHE and Starr be ordered to pay plaintiff's attorneys' fees for the present motion and for the November 6, 1995 motion, with such fees totalling $5,785.30; and (8) that defaulting defendant Schneiderman be ordered to pay plaintiff's attorneys' fees for the present motion, with such fees totalling $1,137.20.

In deciding the present motion, the Court will consider each of plaintiff's requests individually, assessing whether the sanction is an appropriate response given the egregious misconduct of the defaulting defendants. Additionally, since Starr has seen fit to offer arguments against the present motion and remains at least marginally responsive in the present litigation, the Court will consider sanctions against Starr separately from the issue of sanctions against NHE and Schneiderman. Finally, since Starr's arguments regarding attorneys' fees would affect the amount of such fees imposed upon each defaulting defendant, this issue will be considered last.

## II. DISCUSSION

### A. Legal Standards

Fed.R.Civ.P. 37(d) provides that if a party fails to serve answers or objections to interrogatories, "the court in which the action is pending on motion may make such orders in regard to the failure as are just...." In place of sanctions or in addition to them, a court "*shall* require the party failing to act or the attorney advising that party or both to

pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(d) (emphasis added).

■ As the Second Circuit noted in *Update Art, Inc. v. Modiin Publishing, Ltd.,* 843 F.2d 67 (2d Cir.1988), disciplinary sanctions under Rule 37 serve three fundamental purposes: they ensure that a party will not benefit from its refusal to comply with discovery requests, they act as specific deterrents in a given case and for a particular party, and they can "serve a general deterrent effect on the case at hand and on other litigation...." *Id.* at 71. The Court of Appeals thus stressed its belief in the "importance of appropriate sanctions as a necessary means of dealing with a recusant party," and warned that "a party who flouts such orders does so at his own peril." *Id.* at 71, 73.

The appropriateness of a given sanction is not guided by any firmly defined rules or doctrines. Clearly a sanction should be "just," in accordance with the terms of Rule 37(d), and should also serve the three general purposes outlined in *Update Art.* Within those general guidelines, the Second Circuit has chosen to allow the district courts to exercise their sound discretion in determining which sanctions are appropriate in a specific case. *Sieck v. Russo,* 869 F.2d 131, 134 (2d Cir.1989).

The entry of a default judgment represents perhaps the harshest sanction available to a district court. *See Sieck,* 869 F.2d at 134. The harshness of such a measure does not require that it be taken away from district court judges, as if it were a tool too dangerous for us to wield. As the Supreme Court has noted,

the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976).

Nonetheless, just as one must take care with any device that poses the threat of significant hardship, the Court must be cautious in using the threat of a default judgment. I remain fully aware of and committed to the proposition that motion practice, as well as a trial on the merits, is preferable to a default judgment. I also recognize this circuit's prior decisions emphasizing that, where the sanction may be a default judgment, the Court should be alert to whether the failure to comply with discovery was due to bad faith or willfulness, as opposed to mere inability to comply. *See, e.g., Flaks v. Koegel,* 504 F.2d 702, 709 (2d Cir.1974). Finally, I note that before the sanction of a default judgment is imposed, this circuit has emphasized the party's due process rights to notice and an opportunity to be heard. *See, e.g., United States Freight Co. v. Penn Central Transp.,* 716 F.2d 954, 955 (2d Cir.1983). In exercising my discretion with regard to the present motion, I remain alert to each of these concerns.

### B. Sanctions Against NHE and Schneiderman

#### 1. Entry of Default Judgment

Plaintiff has asked this Court to order NHE and Schneiderman to respond to all previously served discovery requests within two weeks from the date hereof, and to enter a default judgment against such defendants if they do not meet this deadline. With regard to NHE and Schneiderman, the Court notes that these parties have not responded to interrogatories originally served on them in July 1995 and returnable within thirty days. Schneiderman stated on December 8, 1995 that she would reply, but she has made no effort to do so. Plaintiff's discovery requests have remained unanswered for approximately seven months. NHE and Schneiderman have prejudiced plaintiff by precluding her from developing the merits of her case, and have failed even to oppose the present motion for sanctions. To all appearances, NHE and Schneiderman seem to believe that the present suit does not even involve them. They could not be more wrong.

In light of the harshness of the default sanction, the defaulting defendants will have thirty days from the date of this order to respond to all outstanding discovery. Should NHE and Schneiderman continue to flaunt the plaintiff's discovery demands, plaintiff may seek a default judgment for failure to comply. As plaintiff notes, it is seeking to recover "tens of millions of dollars of damages...." Not. Motion. ¶ 6. Consequently, while I would be disposed to grant such a request, it will be conditioned on a motion to be brought by order to show cause why such a judgment should not be entered against NHE and Schneiderman.

In sum, defaulting defendants NHE and Schneiderman have thirty days from the date of this order to comply with plaintiff's discovery requests. If NHE and Schneiderman do not so comply, plaintiff may seek an order to show cause why a default judgment should not be entered. Unless NHE and Schneiderman satisfy this Court that there is some compelling justification for their apparent evasive conduct and long-standing refusal to cooperate in this litigation, a default judgment will be entered against them.

#### 2. Waiver of Objections

Plaintiff seeks an order that, by failing to respond to outstanding discovery requests, NHE and Schneiderman have waived all objections to such discovery, with the exception of objections based upon privilege. Rule 37(d) explicitly provides this Court with the option of sanctioning a non-complying party by refusing to allow that party to "support or oppose designated claims or defenses." Fed. R.Civ.P. 37(b)(2)(B). In holding that NHE and Schneiderman have waived their objections to the outstanding discovery, the effect would not be significantly different from refusing to allow that party to support certain defenses. Moreover, to the modest extent that the effect of deeming objections waived does differ from the terms of Rule 37(b)(2)(B), I find it to be a less drastic sanction. Accordingly, plaintiff's request is granted.

### 3. Suspension of Defendants' Discovery

Plaintiff seeks an order from this Court that NHE and Schneiderman should not be allowed to conduct their own discovery until they have responded to the discovery requests previously served upon them. NHE and Schneiderman are already many months delinquent in answering plaintiff's interrogatories and in complying with plaintiff's document discovery requests. NHE and Schneiderman should now focus on complying with these long-overdue requests, rather than seeking to develop their own interrogatories or requests for document production. Plaintiff's request is granted.

### 4. Extension of Plaintiff's Discovery Period

Plaintiff requests that she be allowed to extend her own period of discovery three months beyond the date set in the pre-trial order, such that she can conduct discovery until October 20, 1996. I find this to be an acceptable request. NHE and Schneiderman's behavior has prevented plaintiff from developing her case. Moreover, while these defaulting defendants have caused a six month delay in discovery, plaintiff seeks only a three month extension. Finally, this extension would not appear to threaten the viability of the January 1997 trial date previously set and unlikely to be changed. Plaintiff's request for an extension of her own discovery period is granted.

### 5. Extension of Period in Which to File Amended Complaint

Assuming that NHE and Schneiderman comply with the outstanding discovery requests, plaintiff seeks to extend her time to file an amended complaint. Specifically, plaintiff requests that this Court allow her to amend her complaint for a period of sixty days beyond the date she receives the outstanding discovery. In a worst-case scenario, where NHE and Schneiderman make use of the full thirty days to comply with this Court's order, such an extension would allow plaintiff to file an amended complaint until approximately the end of June. This would take us perilously close to the July 20 discovery deadline under which the defaulting defendants are still bound. Nevertheless, since such an outcome would be due largely—if not entirely—to the delays of defaulting defendants, plaintiff's request is granted.

### C. Sanctions Against Starr

The attorney for defaulting defendant Starr has submitted an affidavit in which he objects to some of the sanctions sought by plaintiff, does not object to others, and makes certain requests of his own. According to this affidavit, Starr has agreed to "respond to" plaintiff's interrogatories and document demands by the end of the day on March 1, 1996. Starr indicates that plaintiff has accepted this timetable, and that it is understood between the parties that if Starr does not meet this timetable, plaintiff may seek a default judgment against Starr.

However, Starr does not consent to the waiver of objections to outstanding discovery, arguing that there is no current basis for believing that he will proceed in bad faith, and thus no reason to deprive Starr of his substantive right to file objections. Starr also opposes plaintiff's request that Starr's discovery may not begin until outstanding discovery is "complete." According to Starr, this suggests that he would not be able to commence any discovery until this Court adjudicates any motions or proceedings arising out of plaintiff's discovery demands.

### 1. "Responding to" Outstanding Discovery

Although Starr states that he and plaintiff have reached an understanding about the timetable for complying with outstanding discovery requests, plaintiff's response shows that no such understanding has actually been reached. According to plaintiff, Starr agreed not merely to "respond" to outstanding discovery requests by March 1, 1996, but actually to provide the requested documents and file answers to plaintiff's interrogatories. Apparently plaintiff is concerned that Starr's response will consist primarily of objections, and will further hinder the already slow pace of discovery. Fortunately, my decision on the issue of waiver of objections renders this matter moot.

## 2. Waiver of Objections

Starr has asserted that he should not be deemed to have waived all objections to the outstanding discovery, because there is no present reason to believe that he will proceed in bad faith. While Starr appears to be cooperating with outstanding discovery requests more than he has in the past, this cannot erase Starr's established history of delay and avoidance. This history alone makes Starr suspect. Moreover, Starr fails to recognize that the purpose of sanctions is not merely to compel his present cooperation, but also to serve as an example to others. Accordingly, as was the case with NHE and Schneiderman, Starr's delay in responding to discovery is deemed to constitute a waiver of objections to such discovery. The only objections Starr may raise are those of privilege.

In deeming Starr's objections waived, the difference of opinion regarding whether Starr need merely "respond" to plaintiff's discovery requests or actually comply with them is also resolved. Unless Starr objects to the production of documents or the answering of interrogatories on the grounds of privilege, Starr must produce the documents and answer the interrogatories. Given the fact that March 1, 1996 has already passed, if Starr has neither produced the requested discovery nor asserted the defense of privilege by the date hereof, plaintiff may immediately seek a default judgment by a motion brought on by order to show cause.

## 3. Commencement of Starr's Discovery

Starr has stated that if he is not allowed to commence his own discovery until the outstanding discovery is complete, he will have to wait until all further discovery disputes are adjudicated before he may proceed. This concern has been rendered groundless. It is not likely that there will be any disputes for this Court to adjudicate regarding the outstanding discovery, because Starr may no longer present any objections other than privilege. If Starr does assert an objection on the grounds of privilege, he may proceed with discovery while the Court adjudicates that issue. If Starr answers the outstanding interrogatories and turns over the requested documents, there will obviously be nothing for this Court to adjudicate, and Starr may commence discovery. Finally, if Starr does not assert privilege, and does not answer the interrogatories or turn over the requested documents, a default judgment may be sought. Starr's objection is without merit, and his discovery may not commence until he has complied with this Court's order.

## 4. Starr's Request for an Extension

Starr's request for an extension of his own time to conduct discovery is denied. Starr has argued that if plaintiff is granted a discovery extension, Starr should receive the same extension. This is an audacious argument for Starr to make, since it is his own irresponsibility and lack of compliance that have led to the current state of affairs. It is unclear precisely how Starr can even entertain the notion that he is entitled to the same extension afforded plaintiff. In addition, since plaintiff's extension for filing an amended complaint has been accepted only after determining that Starr will still be left with enough time to conduct discovery in response to an amended complaint, there is no reason to grant Starr's requested extension.

## D. Attorneys' Fees and Expenses

Plaintiff seeks attorneys' fees and expenses incurred in these two motions. Fed. R.Civ.P. 37(d) provides for an award of attorneys' fees in this situation, but does not discuss whether a hearing is required, or whether the motion may be decided based on written submissions. Fed.R.Civ.P. 37(a)(4)(A), an analogous provision, states that the court must afford the parties "an opportunity to be heard." The Advisory Committee notes make clear that awards pursuant to that provision may be granted based on written submissions or oral hearings. Fed.R.Civ.P. 37(a)(4)(A) advisory committee notes to 1993 amendment. I find that this principle applies to the present motion for sanctions under Fed.R.Civ.P. 37(d). Here, the defaulting defendants were on notice that attorneys' fees were being sought, were advised of the precise amount of the fees being sought, and were given an opportunity to argue against such fees in their own

papers. Accordingly, I find that all parties had an adequate opportunity to be heard in connection with this sanction.

■ Starr raises two arguments with regard to the attorneys' fees sought by plaintiff. Starr first asserts that the amount of the fees set forth by plaintiff is unreasonable, and that I should make an independent determination of such fees. This argument is without merit. Starr apparently does not realize that the fees sought are intended to compensate plaintiff not just for the present motion, but also for plaintiff's November 6, 1995 motion for sanctions. In response to that earlier motion, I held that upon plaintiff's submission of documents substantiating her attorneys' fees, NHE and Starr would be ordered to pay such fees. Mem. and Order January 6, 1996, at 5–6. Plaintiff has provided documentation which states that the fees incurred for these motions total $6,922.50. I see nothing unreasonable about the amount of these fees.

■ Second, Starr argues that the apportionment of attorneys' fees sought by plaintiff is unjust. Specifically, Starr points out that whereas plaintiff seeks one-third of the attorneys' fees for the present motion from Schneiderman, plaintiff apparently wishes to have this Court declare Starr and NHE jointly liable for the remaining two-thirds of the fees. Starr argues that since he is opposing the present motion solely in his individual capacity, and since he has agreed to comply with outstanding discovery, he should be liable for only one-third of the fees from the present motion.

Plaintiff has failed to respond to Starr's argument. It may be that defendant Starr is one of the few people who could respond to discovery requests on behalf of NHE. If this were true, it might be reasonable to hold Starr jointly liable for the attorneys' fees imposed upon NHE. However, plaintiff has not argued as such, and I therefore grant Starr's request. NHE and Starr are severally liable for plaintiff's attorneys' fees. NHE and Starr must divide and pay the $3,510.90 in attorneys' fees arising from plaintiff's November 6, 1995 motion. NHE, Starr, and Schneiderman must also divide and pay the $3,411.60 in attorneys' fees stem-ming from the present motion. As such, Starr is liable for $2,892.65, NHE is liable for $2,892.65, and Schneiderman is liable for $1,137.20.

## III. CONCLUSION

Due to the defaulting defendant's failure to comply with discovery requests, plaintiff is granted an extension of the discovery period until October 20, 1996. Plaintiff may also file an amended complaint for 60 days following the date when defaulting defendants comply with this order. Defendant Starr is not granted any extension whatsoever. In addition, the three defaulting defendants are subject to the following sanctions pursuant to Rule 37(d):

### Schneiderman

(1) Schneiderman must comply with the outstanding discovery requests within 30 days of this order.

(2) In responding to these requests, Schneiderman is deemed to have waived all objections except privilege.

(3) If Schneiderman fails to comply with this order, plaintiff may move by an order to show cause why a default judgment should not be entered against Schneiderman.

(4) Schneiderman may not conduct her own discovery until she has complied with this order.

(5) Schneiderman must compensate plaintiff for $1,137.20 in attorneys' fees and expenses.

### NHE

Of the sanctions listed immediately above, NHE is subject to sanctions (1)–(4). Additionally, NHE must compensate plaintiff for $2,892.65 in attorneys' fees and expenses.

### Starr

Starr is subject to sanctions (2)–(4), and must compensate plaintiff for $2,892.65 in attorneys' fees and expenses. If Starr has not fulfilled his agreement to respond to outstanding discovery requests by March 1, 1996, plaintiff may immediately bring on a

motion by order to show cause why a default judgment should not be entered.

**SO ORDERED.**